No. 25-2526

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| CHILDREN OF THE COURT, a non-profit corporation; and CONOR PARIS, | ) ) ) | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 1:24-cv-08785 |
| JUDGE ABBEY FISHMAN ROMANEK; IRIS Y. MARTINEZ, individually and in her official capacity as Clerk of the Circuit Court of Cook County; COOK COUNTY, ILLINOIS; and JUDGE TIMOTHY C. EVANS, individually and in his representative capacity as Chief Judge of the Circuit Court of Cook County, | ) ) ) ) ) ) ) ) ) ) ) | |
| | ) ) | The Honorable LINDSAY C. JENKINS, |
| Defendants-Appellees. | ) | Judge Presiding. |

**BRIEF OF STATE DEFENDANTS-APPELLEES**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

**SAMANTHA E. CUTLER**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-2531 (cell)
(773) 835-0740 (office)
Samantha.Cutler@ilag.gov

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3312

Attorneys for State
Defendants-Appellees

# TABLE OF CONTENTS

*Page(s)*

JURISDICTIONAL STATEMENT ........................................................................ 1

ISSUES PRESENTED FOR REVIEW ................................................................ 4

STATEMENT OF THE CASE ............................................................................... 5

SUMMARY OF THE ARGUMENT .................................................................... 15

ARGUMENT ......................................................................................................... 17

I.  This court reviews the dismissal of Plaintiffs' claims *de novo* and may affirm the district court's judgment on any ground supported by the record and law. ................................................................................................ 17

II.  This court can affirm the dismissal of the complaint by abstaining from exercising jurisdiction so as not to intrude upon the independence of state courts. ......................................................................................................... 17

III.  Alternatively, this court should affirm the dismissal of plaintiffs' action for failure to state a claim even though the district court concluded that abstention was appropriate. .......................................................................... 22

IV.  The district court correctly dismissed plaintiffs' right of access claim against state defendants with prejudice. ................................................................... 23

    A.  Plaintiffs' claims are barred by judicial immunity, section 1983, and the Eleventh Amendment. .......................................................................... 24

        1.  Absolute judicial immunity barred the claim for damages against Judge Romanek. ........................................................................... 24

        2.  Absolute judicial immunity barred the claim for damages against Judge Evans. ................................................................................ 31

        3.  Section 1983 bars plaintiffs' claims for injunctive relief. ............. 32

        4.  Plaintiffs are not entitled to declaratory relief. ........................... 33

5. Plaintiffs' official-capacity claim against the Chief Judge was also barred by the Eleventh Amendment. ............................................. 35

B. Plaintiffs failed to plead a right of access under *Press-Enterprise*. ......... 36

C. The individual-capacity claim against Judge Evans fails for the additional reason that plaintiffs did not allege his personal involvement in the alleged constitutional violation. ...................................................... 39

CONCLUSION ........................................................................................................ 44

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

**Cases**

*Page(s)*

*AP v. Neal*, No. 25-2025,
2026 U.S. App. LEXIS 16267 (7th Cir. June 5, 2026) ....................................... 37

*Ashcroft v. Iqbal,*
555 U.S. 662 (2009) ..........................................................................38, 39, 40

*Bd. of the Cnty. Comm'rs v. Brown*,
520 U.S. 397 (1997) .................................................................................. 50

*Boim v. Am. Muslims for Palestine*,
9 F.4th 545, 550 (7th Cir. 2021) ................................................................ 23

*Bovee v. Broom*,
732 F.3d 743 (7th Cir. 2013) ....................................................................... 2

*Brown v. Maine*, No. 11-cv-426,
2012 U.S. Dist. LEXIS 160600 (D. Me. Nov. 12, 2012) ..................................... 32

*Brunson v. Murray*,
843 F.3d 698 (7th Cir. 2016) ..................................................................... 25

*Council 31 of AFSCME, AFL-CIO v. Quinn*,
680 F.3d 875 (7th Cir. 2012) ..................................................................... 36

*Courthouse News Service v. Brown*,
908 F.3d 1063 (7th Cir. 2018) ...............................................................*Passim*

*Dawson v. Newman*,
419 F.3d 656 (7th Cir. 2005) ..................................................................... 24

*Dean v. Wexford Health Sources, Inc.*,
18 F.4th 214 (7th Cir. 2021) ................................................................50, 52

*Dhakal v. Sessions*,
895 F.3d 532 (7th Cir. 2018) ..................................................................... 17

*Doyle v. Camelot Care Ctrs., Inc.*,
　　305 F.3d 603 (7th Cir. 2002)...............................................30

*Ex parte Young*,
　　209 U.S. 123 (1908) ...............................................36

*Foley v. Marquez*, No. 03-2481,
　　2004 U.S. Dist. LEXIS 4870 (N.D. Cal. Mar. 22, 2004) .....................................32

*Forrester v. White*,
　　484 U.S. 219 (1988) ...............................................25, 29, 32

*Globe Newspaper Co. v. Super. Ct. for the Cnty. of Norfolk*,
　　457 U.S. 596 (1980) ...............................................38

*J.B. v. Woodard*,
　　997 F.3d 714 (7th Cir. 2021)...............................................18, 20, 21, 23

*John v. Barron*,
　　897 F.2d 1387 (7th Cir. 1990)...............................................27

*Johnson v. McCuskey*,
　　72 Fed. Appx. 475(7th Cir. 2003). ...............................................41

*Joseph v. Bd. of Regents of Univ. of Wis. Sys.*,
　　432 F.3d 746 (7th Cir. 2005)...............................................35

*KAP Holdings, LLC v. Mar-Cone Appliance Parts Co.*,
　　55 F.4th 517 (7th Cir. 2022) ...............................................17, 40

*Killinger v. Johnson*,
　　389 F.3d 765 (7th Cir. 2004)...............................................28

*Kowalski v. Boliker*,
　　893 F.3d 987 (7th Cir. 2018)...............................................25, 27

*Kress v. CCA of Tenn., LLC*,
　　694 F.3d 890 (7th Cir. 2012)...............................................41-42

*Lee v. Milwaukee Cnty.*,
　　175 F.4th 877 (7th Cir. 2026)...............................................50, 51

*Lewert v. P.F. Chang's China Bistro, Inc.*,
　　819 F.3d 963 (7th Cir. 2016)...............................................22

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
　　935 F.3d 573 (7th Cir. 2019) ................................................................. 18

*McHugh v. Ill. Dep't of Transp.*,
　　55 F.4th 529 (7th Cir. 2022) ................................................................... 1

*McMillan v. Svetanoff*,
　　793 F.2d 149 (7th Cir. 1986) ................................................................ 32

*Milchtein v. Milwaukee Cnty.*,
　　42 F.4th 814 (2022) ............................................................................... 39

*Minix v. Canarecci*,
　　597 F.3d 824 (7th Cir. 2010) ................................................................ 39

*Mireles v. Waco*,
　　502 U.S. 9 (1991) ............................................................... 24, 26, 29, 30

*Monell v. Dep't of Soc. Servs. of City of New York*,
　　436 U.S. 658 (1978) .................................................................. 9, 35, 41

*N. Jersey Media Grp., Inc. v. Ashcroft*,
　　308 F.3d 198 (3d Cir. 2002). ................................................................ 37

*Nowicki v. Cooper*,
　　56 F.3d 782 (7th Cir. 1995) ................................... 24, 26, 28, 29, 30, 35

*Ollison v. Gossett*,
　　136 F.4th 729 (7th Cir. 2025) .............................................................. 39

*People v. Hollahan*,
　　2020 IL 125091 .............................................................................. 27, 29

*Pierson v. Ray*,
　　386 U.S. 547 (1967) .............................................................................. 24

*Press-Enterprise Co. v. Superior Ct.*,
　　478 U.S. 1 (1986) ......................................................................... *Passim*

*Pulliam v. Allen*,
　　466 U.S. 522 (1984) ........................................................................ 32, 33

*Reardon v. Danley*,
74 F.4th 825 (7th Cir. 2023) ..................................................................... 33

*Rheuark v. Shaw*,
628 F.2d 297 (5th Cir. 1980) ..................................................................... 32

*Ruiz-Cortez v. City of Chi.*,
931 F.3d 592 (7th Cir. 2019) ..................................................................... 41

*Sanville v. McCaughtry*,
266 F.3d 724 (7th Cir. 2001) ..................................................................... 39

*Sherwood v. Marchiori*,
76 F.4th 688 (7th Cir. 2023) ..................................................................... 17

*SKS & Assocs., Inc. v. Dart*,
619 F.3d 674 (7th Cir. 2010) ............................................................... 19, 20

*Smith v. City of Hammond*,
388 F.3d 304 (7th Cir. 2004) ..................................................................... 34

*Stump v. Sparkman*,
435 U.S. 349 (1978) ..............................................................25, 27, 28, 30

*Thompson v. Duke*,
882 F.2d 1180 (7th Cir. 1989) ............................................................. 29, 30

*U.S. v. Mannie*,
509 F.3d 851 (7th Cir. 2007) ............................................................... 27, 30

*Westbrook v. Hahn*,
829 Fed. App'x 128 (7th Cir. 2020) ...............................................27, 28, 29

*White v. United States*,
8 F.4th 547 (7th Cir. 2021) ................................................................. 35, 41

*Will v. Michigan Dep't of State Police*,
491 U.S. 58 (1989) ..................................................................................... 35

*Williams v. Howell*, No. 23-312,
2023 U.S. Dist. LEXIS 36990 (D.D.C. Mar. 6, 2023). ........................... 32

*Wis. Dep't of Corr. v. Schacht*,
524 U.S. 381 (1998) ..................................................................................... 1

**Statutes and Regulations**

750 ILCS 5/401 ......................................................................................... 27

750 ILCS 5/606.5(d)................................................................................ 37

Pub. L. No. 104-317, § 309(c) .............................................................. 33

42 U.S.C. § 1983 ...........................................................................*Passim*

**JURISDICTIONAL STATEMENT**

The jurisdictional statement of Plaintiffs-Appellants Children of the Court and Conor Paris is not complete and correct. As required by 7th Cir. R. 28(b), State Defendants-Appellees Judge Abbey Fishman Romanek and Judge Timothy C. Evans (together, "state defendants"), provide this statement.[1]

Plaintiffs filed their complaints in the district court under 42 U.S.C. § 1983 claiming that state defendants, as well as Iris Martinez, individually and in her official capacity as Clerk of the Circuit Court of Cook County, and Cook County, Illinois (together, "Cook County defendants"), violated their right of access to public proceedings under the First and Fourteenth Amendments to the United States Constitution. Doc. 1; Doc. 29; Doc. 44.[2] As explained *infra* pp. 34-36, to the extent that the Eleventh Amendment to the United States Constitution affects subject matter jurisdiction, the district court lacked jurisdiction over plaintiffs' claim against the Chief Judge in his official capacity. *See McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 532-34 (7th Cir. 2022) (Eleventh Amendment immunity is jurisdictional but can be waived); *see also Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (United

---

[1] Plaintiffs brought this action against Judge Evans, then the chief judge of the Circuit Court of Cook County, in his individual and official capacities. Doc. 29 at 1; Doc. 44 at 1. This court should substitute the circuit court's current chief judge, Judge Charles S. Beach II, for purposes of plaintiffs' official-capacity claims under Fed. R. App. P. 43(c)(2).

[2] The district court docket, which is the record on appeal, is cited as "Doc. __." Plaintiffs' opening brief is cited as "AT Br. __."

States Supreme Court has "not decided" whether "Eleventh Amendment immunity is a matter of subject-matter jurisdiction"). Furthermore, as explained more fully in this brief, the district court correctly determined that abstaining from exercising federal jurisdiction over plaintiffs' action would have been appropriate. *See infra* pp. 17-22. The district court otherwise had subject matter jurisdiction over plaintiffs' action under 28 U.S.C. § 1331 because it raised a federal question.

The district court dismissed plaintiffs' claims with prejudice under Fed. R. Civ. P. 12(b)(6) as to Judge Romanek on December 19, 2024, Docs. 23 & 25, as to the Cook County defendants on March 5, 2025, Doc. 46, and as to Judge Evans on July 24, 2025, Doc. 53, thereby disposing of all claims against all parties.[3] In dismissing state defendants, the court ruled that it would be appropriate to abstain from exercising federal jurisdiction, Doc. 25 at 8-9; Doc. 53 at 2-3, but dismissed plaintiffs' claims with prejudice for failure to state a claim on which relief may be granted, Doc. 25 at 6-7; Doc. 53 at 2-4. Even if the district court had declined to exercise jurisdiction over plaintiffs' action, however, such a dismissal would be final for purposes of appeal. *See Bovee v. Broom*, 732 F.3d 743, 743-44 (7th Cir. 2013) (this court has appellate jurisdiction over dismissal by district court for lack of jurisdiction). On July

---

[3] Although the district court's order dismissing Judge Evans indicated that the Circuit Court of Cook County was named as a defendant in the second amended complaint, Doc. 53 at 1, it was not, *see* Doc. 44 at 1 (naming Judge Evans "individually *and in his representative capacity as* The Circuit Court of Cook County"); *id*. at 3 (not referring to the circuit court as a "defendant"); AT Br. 11 (second amended complaint narrowed plaintiffs' "allegations to *only* Defendant-Appellee Evans") (emphasis in original).

2

24, 2025, a separate judgment order was entered on the district court docket pursuant to Fed. R. Civ. P. 58.  Doc. 54.  No motion to alter or amend the judgment was filed.

Plaintiffs filed their notice of appeal on August 22, 2025.  Doc. 55.  The notice of appeal was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because it was filed within 30 days of the final judgment's entry.  This court has jurisdiction over plaintiffs' appeal from a final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether this court should abstain from exercising subject matter jurisdiction, and dismiss this action without prejudice, because plaintiffs' claim raised serious federalism and comity concerns by seeking federal court intrusion into state court proceedings.

2.      Alternatively, whether the district court correctly held that plaintiffs failed to state a claim on which relief may be granted because:

      a.      The relief plaintiffs sought was barred by judicial immunity, section 1983, and the Eleventh Amendment;

      b.      alternatively, plaintiffs failed to sufficiently plead a First Amendment right of access claim; and

      c.      in the further alternative, Judge Evans was not personally involved in the alleged constitutional deprivation.

**STATEMENT OF THE CASE**

**The Original Complaint**

Plaintiffs filed the original complaint in this action in September 2024.  Doc. 1. The original complaint alleged the following.

Children of the Court is a non-profit corporation that advocates for the assignment of cases involving divorce and parental decisions to judges with relevant personal experience, with the goal of "ensur[ing] that children's best interests are always considered" and "increas[ing] the esteem the public has for the judiciary."  *Id*. at 1, 3-4.  It also "works with adult children of divorce to reunite [them] with the courtrooms and judges that often had an outsized impact on their youth" by facilitating court visits.  *Id*. at 1, 4.

In February 2024, Children of the Court's operations manager sent letters on behalf of its "adult beneficiaries" to "judges and their supervisors" across the country.  *Id*.  The letters described the organization's goals, "gave notice that an Adult Beneficiary would be visiting their courtroom" with Children of the Court, and requested that the recipient judge "offer appropriate advice for the visit."  *Id*.  One of these letters was sent to Judge Romanek, who did not respond.  *Id*. at 5.

Paris is an "adult beneficiary" of Children of the Court.  *Id*. at 1.  His parents are divorced, and Judge Romanek presides over the post-dissolution matters in their case.  *Id*. at 5.  On August 5, 2024, Judge Romanek held a "general status call attended by numerous litigants and attorneys with different matters before the

5

Court," which was scheduled to include "presentation of a motion" in Paris's parents' case. *Id*. Paris was planning to attend "to better understand the decisions of Judge Romanek and the representation his minor siblings were receiving" from their guardian *ad litem*. *Id*. at 6. Paris's attendance was facilitated by a director of Children of the Court "to ensure [he] understood the proceedings and followed proper courtroom etiquette." *Id*. at 6. Paris was going to attend via Zoom, "as were a number of litigants, attorneys, and other observers." *Id*.

When Paris's parents' matter was called, Judge Romanek did not admit him to the court's Zoom session. *Id*. She remarked: "Conor Paris is here. He has no business being here and he shouldn't be here and I am not letting him in. He shouldn't know about court dates." *Id*. Children of the Court's founder and executive director, Edward Weinhaus, was present at the hearing and heard Judge Romanek's comments. *Id*.

Plaintiffs alleged that by declining to admit Paris to the August 2024 hearing, Romanek and the County Defendants deprived plaintiffs of their First Amendment right to attend public proceedings. *Id*. at 7. They sought a declaratory judgment that plaintiffs' rights were violated, an injunction "preventing Defendants from engaging in further unconstitutional conduct," and damages. *Id*. at 8.

Judge Romanek moved to dismiss plaintiffs' claims, arguing that Children of the Court lacked standing, that she was entitled to judicial immunity, and that section 1983 barred injunctive relief against a judge. Doc. 17 at 2-4. She also argued

that the district court should abstain from exercising jurisdiction over plaintiffs' claim based on the principles of equity, comity, and federalism, because plaintiffs were asking the district court to "dictate to state courts how best to manage their courtrooms." *Id.* at 4-6.

Plaintiffs responded and argued that Children of the Court had standing and that judicial immunity did not apply because Judge Romanek's decision to deny Paris entrance to the hearing was an administrative act rather than a judicial one. Doc. 22 at 2-6. Similarly, they argued that section 1983's bar to injunctive relief applied only to judicial actions. *Id.* at 6-7. Finally, plaintiffs contended that abstention was not warranted. *Id.* at 7.

After a hearing, the district court dismissed plaintiffs' claim against Judge Romanek with prejudice and dismissed the claim against the Cook County defendants without prejudice, granting plaintiffs leave to file an amended complaint. Doc. 23. The district court held that Judge Romanek was "entitled to absolute judicial immunity" because she was "acting within her role as a judge" when she excluded Paris from the hearing. *Id.* at 6-7. The court added that immunity aside, "Section 1983 does not permit injunctive relief in this context," *i.e.*, "an action brought against a judicial officer for an act or omission taken in that officer's judicial capacity," and that the case raised "a significant federalism concern" because it was "essentially asking [the district court] to tell a state court judge how to run her courtroom." *Id.* at 8.

**The First Amended Complaint**

Plaintiffs filed their first amended complaint in January 2025, naming as defendants Judge Evans, "individually and in his representative capacity as Chief Judge of The Circuit Court of Cook County," and Cook County. Doc. 29 at 1. Plaintiffs again alleged that Judge Evans and Cook County violated their First Amendment right to attend public proceedings. *Id.* at 10-11. Plaintiffs again sought a declaratory judgment and damages but omitted their prior request for injunctive relief. *Id.* at 11.

The first amended complaint was largely identical to the original complaint but added the following allegations. As an "adult beneficiary" of Children of the Court, Paris received "instructions on how to conduct himself and access the public proceedings" and benefitted from Children of the Court's time, efforts, and funds. *Id.* at 6. After plaintiffs filed the original complaint in this matter, plaintiffs' counsel sent an email to Judge Romanek's chambers, notifying her that Children of the Court and Paris planned to attend a hearing on September 25, 2024. *Id.* at 7. On September 25, Weinhaus "attempt[ed] to observe an otherwise public hearing" on behalf of Children of the Court, "particularly to assist in counseling Conor Paris." *Id.* Judge Romanek did not allow Weinhaus into the hearing. *Id.*

Plaintiffs alleged that Judge Romanek's decision to close her courtroom was "the opening salvo in plans to limit accessibility to the Cook County Domestic Relations Division" by requiring in-person, rather than virtual, court appearances.

*Id*. at 9.  As the circuit court's chief judge, Judge Evans had "significant administrative and judicial responsibilities," including supervising the judges under his charge and ensuring that litigants and the public have access to the court.  *Id*.  He had an obligation to supervise Judge Romanek and ensure that the public had access to her courtroom.  *Id*.

Judge Evans moved to dismiss, arguing that plaintiffs' claim that he failed to supervise another judge in his capacity as chief judge implicated a judicial function and was thus barred by absolute judicial immunity.  Doc. 39 at 2-4.  Additionally, Judge Evans argued that plaintiffs' claim failed because there were no allegations of his personal involvement in the alleged constitutional deprivation, and Section 1983 does not provide for *respondeat superior* liability.  *Id*. at 4.  Finally, Judge Evans argued that Children of the Court lacked standing.  *Id*.

Plaintiffs responded, arguing that they had a constitutionally protected right to attend public proceedings, and that there was no compelling government interest in excluding them.  Doc. 41 at 3.  Plaintiffs further contended that Judge Evans was not immune from liability because his "failure to ensure judges under [his] charge follow the constitution" was an administrative act.  *Id*. at 4.  They also claimed that their allegations established "supervisory liability or municipal liability" under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and that Children of the Court had standing.  *Id*. at 4-5.

The district court granted Judge Evans's motion to dismiss, without prejudice

and with "one final opportunity" to amend the complaint. Doc. 43 at 5. The district court first observed that the fact that plaintiffs' claim was based on acts of state court judges "counsel[ed] in favor of the Court abstaining from exercising jurisdiction over this case and dismissing the action without prejudice." *Id*. at 4. In any event, plaintiffs failed to state a claim against Judge Evans, the court continued, because he had "absolute judicial immunity for actions taken within the scope of his employment," including his role of supervising other judges, and "holding supervising judges liable for the actions of judges under their supervision would be an end-run around judicial immunity." *Id*. at 3-5 (cleaned up). Furthermore, the district court held that plaintiffs failed to allege Judge Evans's personal involvement, such as "what actions he took or failed to take with respect to Judge Romanek's decision," or even that he was aware of it. *Id*. at 5. And *respondeat superior* liability was not available under section 1983.

**The Second Amended Complaint**

Plaintiffs filed their second amended complaint in May 2025, naming Judge Evans as the sole defendant, "individually and in his representative capacity as The Circuit Court of Cook County." Doc. 44 at 1. They alleged that Judge Evans violated their First Amendment right to attend the 2024 hearings through his "failure to stop the delegitimization efforts" of judges under his charge. *Id*. at 12-13. They claimed that the "repeated refusal" to admit them to hearings demonstrated a "policy within the Circuit Court to wantonly deny members of the public from otherwise public

proceedings." *Id*. at 13. Plaintiffs again asked for declaratory relief and damages. *Id*. at 13-14.

The second amended complaint was largely identical to the first amended complaint but added the following allegations, as relevant here. Paris had planned to attend the August 2024 hearing in part to "monitor the Court for the need to enforce his own rights," specifically his right to request visitation with a sibling under 750 ILCS 5/602.9. *Id*. at 8. When Children of the Court sent letters to several judges and their supervisors in February 2024, one was sent to Marcia Meis, Director of the Administrative Office of the Illinois Supreme Court, as well as her counterparts in other States. *Id*. at 5. Judge Regina A. Scannicchio, the head of the Domestic Relations Division, had previously "sought to delegitimize Children of the Court," and Meis "aid[ed] and abett[ed]" Judge Scannicchio's efforts by advising colleagues within the Illinois court system, and in Missouri and Iowa, that Children of the Court's letter was not "a legitimate document." *Id*. at 5-6. Plaintiffs alleged that Meis's message "reached" Judge Evans, who knew or should have known that Meis was "either wrong or not being forthright about protected speech, access to courtrooms, and Children of the Court's judicial reform activities." *Id*. at 6.

Plaintiffs further alleged that, as Chief Judge, Judge Evans oversaw Judge Scannicchio and was aware of her animus towards Children of the Court because of prior litigation. *Id*. at 7. And Judge Evans was aware of both Children of the Court's "legitimacy" and its planned visit to Judge Romanek's courtroom because: (1) he

11

received Children of the Court's February 2024 letter; and (2) the "order creating Children of the Court" and "guarantee[ing] its funding" was entered in the Chancery Division of the Circuit Court of Cook County. *Id*. Plaintiffs alleged that Judge Evans had (1) exhibited "deliberate indifference and unwillingness to correct Marcia Meis'[s] false statements about Children of the Court's communication," *id.* at 6-7, (2) failed to correct Meis and Judge Scannicchio's "efforts to delegitimize legitimate activities," which "allowed" Judge Romanek's actions at the 2024 hearings, *id.* at 10, and (3) "endorse[d]" Judge Romanek's denial of plaintiffs' access to proceedings, *id.* at 12, all of which had led to a "policy whereby jurists can wantonly deny individual litigants access to the Courts," *id*. at 11-12.

Judge Evans again moved to dismiss, first arguing that any official-capacity claim for damages was barred by the Eleventh Amendment and because state officials in their official capacity are not persons under section 1983. Doc. 48 at 2 n.1. And the individual-capacity claim was barred by judicial immunity. *Id*. at 4-5. Next, Judge Evans argued that plaintiffs' First Amendment claim failed on the merits because they failed to allege that they had a right of access to hearings in sensitive domestic relations cases to which they were not parties. *Id*. at 3. Furthermore, Judge Evans continued, the district court should abstain from exercising jurisdiction because it was not appropriate for a federal court to "'supervise state court operations,'" *id*. (quoting *Courthouse News Service v. Brown*, 908 F.3d 1063, 1070 (7th Cir. 2018)), and who is admitted to domestic relations proceedings "can be a very

12

sensitive and case specific issue" that is best left to the state court to decide, *id*. at 4. Finally, Judge Evans argued that notwithstanding plaintiffs' allegations regarding Meis and Judge Scannicchio, plaintiffs did not plead that Judge Evans was personally involved in any constitutional violation. *Id*. at 1, 5.

Plaintiffs responded, first arguing that they had a First Amendment right to attend the 2024 hearings, then contending that Judge Romanek failed to show a "compelling governmental interest" in denying them access. Doc. 50 at 3-4. Plaintiffs further argued that abstention was not warranted because they were not seeking a "supervisory role over state court operations." *Id*. at 4-5. Next, plaintiffs asserted that Judge Evans was not entitled to judicial immunity because his failure to "ensure judges under [his] charge follow[ed] the constitution" was an administrative act. *Id*. at 5. Finally, plaintiffs argued that "supervisory liability or municipal liability" under *Monell* applied because there was a "custom of depriving the public of their constitutional rights" and excluding the public from public proceedings. *Id*. at 5-6. Plaintiffs contended that Judge Evans "tacitly endorsed" Meis's effort to "deliberately delegitimize Children of the Court" and Judge Romanek's "pattern of excluding those she arbitrarily deem[ed] unfit," which gave rise to *Monell* liability. *Id*. at 6-7.

In reply, Judge Evans first noted that plaintiffs had failed to address the applicable test for a right of access claim, and had therefore forfeited that argument. Doc. 51 at 2. Furthermore, *Monell* liability was unavailable because such claims

"apply only to local municipalities, not state entities like the Illinois State Courts." *Id*. at 2-3.

The district court dismissed plaintiffs' claim with prejudice. Docs. 52 & 53. First, the court explained that the official-capacity claim against the Chief Judge was barred by the Eleventh Amendment. Doc. 53 at 1 n.4. Then, the court observed that this court's ruling in *Courthouse News* indicated that abstention was appropriate. *Id*. at 2-3. The district court went on to address the merits, however, noting that plaintiffs "still [did] not engage" with the relevant test for a right of access claim. *Id*. at 2. In any event, the individual-capacity claim against Judge Evans was barred by judicial immunity, and also failed for the independent reason that plaintiffs "still [did] not allege facts demonstrating Judge Evans's personal involvement in (or awareness of) [Judge] Romanek's decisions." *Id*. at 3. Finally, the district court noted that plaintiffs' mention of *Monell* liability was a "nonstarter" because the second amended complaint alleged only a "few scattered claims of practices and display of deliberate indifference," which was insufficient to show that a policy or custom caused the deprivation of their rights. *Id*. at 3 n.5. Furthermore, *Monell* "does not apply to states or states' departments." *Id*.

Plaintiffs timely appealed.

## SUMMARY OF THE ARGUMENT

This court should affirm the dismissal of plaintiffs' action for two alternative reasons: (1) because the district court correctly concluded that it was appropriate to abstain from exercising jurisdiction over plaintiffs' claim; or (2) because plaintiffs failed to state a claim on which relief may be granted. First, the district court correctly determined that it would be appropriate to abstain from exercising jurisdiction over plaintiffs' action. Their claim, which sought monetary, injunctive, and declaratory relief, raised serious federalism and comity concerns because plaintiffs asked a federal court to inject itself into a state court domestic relations matter and the operations of the state circuit court. Abstention from exercising jurisdiction is therefore warranted. This court can affirm on that basis and modify the district court's judgment to be without prejudice to seeking relief in state court.

Alternatively, the court can affirm the dismissal for failure to state a claim. At the outset, even though the district court concluded that abstention was warranted, it proceeded to exercise jurisdiction over the case and dismiss plaintiffs' action for failure to state a claim. Affirming the dismissal therefore would not improperly enlarge the judgment in state defendants' favor, even though the district court held that abstention would have been proper, because the district court dismissed plaintiffs' action with prejudice.

Plaintiffs' claim seeks relief for alleged First Amendment violations related to (1) Judge Romanek's decisions regarding admission to a domestic relations

proceeding and (2) Judge Evans's oversight of subordinate judges and administrators in his role as chief judge. These claims fail at the threshold due to judicial immunity and the Eleventh Amendment, and because injunctive relief is unavailable under section 1983. Even if these obstacles could be overcome, Plaintiffs failed to state a claim for a violation of their First Amendment right of access. This court should affirm.

**ARGUMENT**

**I.   This court reviews the dismissal of plaintiffs' claims *de novo* and may affirm the district court's judgment on any ground supported by the record and law.**

This court reviews dismissals for failure to state a claim *de novo*. *Sherwood v. Marchiori*, 76 F.4th 688, 693 (7th Cir. 2023). And, "[i]n reviewing the district court's decision whether to abstain, the underlying legal questions are subject to *de novo* review, and the ultimate decision itself is reviewed for abuse of discretion." *Courthouse News*, 908 F.3d at 1068. On *de novo* review, this court may "affirm the district court's dismissal on any ground supported by the record, even if different from the grounds relied upon by the district court." *Dhakal v. Sessions*, 895 F.3d 532, 536 (7th Cir. 2018) (internal quotations omitted).

In reviewing a dismissal for failure to state a claim, this court accepts the facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Sherwood*, 76 F.4th at 693. However, legal conclusions and conclusory allegations that merely recite the elements of a claim "are not entitled to this presumption of truth." *KAP Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (cleaned up).

**II.   This court can affirm the dismissal of the complaint by abstaining from exercising jurisdiction so as not to intrude upon the independence of state courts.**

The district court correctly observed that abstention from exercising jurisdiction over plaintiffs' action was appropriate here. Doc. 25 at 8-9; Doc. 53 at 2-

3. Although the district court went on to dismiss the claims with prejudice for failure to state a claim, Doc. 53 at 3-4, Doc. 23, this court can affirm the dismissal on that abstention ground and modify the district court's judgment to be without prejudice. *See Courthouse News*, 908 F.3d at 1075 (dismissal on abstention grounds is without prejudice); *see also MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019) (dismissal for lack of subject matter jurisdiction is without prejudice).

There are several circumstances in which federal courts "must abstain from deciding cases otherwise within their jurisdiction." *See J.B. v. Woodard*, 997 F.3d 714, 722-23 (7th Cir. 2021) (describing the *Rooker-Feldman*, *Younger*, and *Burford* doctrines, as well as the domestic relations exception to federal jurisdiction). But even if none of these established doctrines is "a literal or perfect fit[,]" federal courts should abstain if exercising jurisdiction "risks a serious federal infringement." *Id*.; *see also Courthouse News*, 908 F.3d at 1071 (abstaining based on "the more general principles of federalism that underlie all of the abstention doctrines" when *Younger* doctrine was not a "perfect fit"). Indeed, a federal court "may, and often must, decline to exercise its jurisdiction where doing so would intrude upon the independence of the state courts." *Courthouse News*, 908 F.3d at 1070-71.

*Courthouse News* is controlling. There, the plaintiff brough a First Amendment right of access claim under section 1983, challenging the circuit court's procedures regarding public access to court filings. *Id.* at 1065-67. The district court

18

declined to abstain and granted a preliminary injunction, reasoning that "there were no ongoing state judicial proceedings with which [the] requested injunctive relief might interfere." *Id*. at 1067-68 (cleaned up). This court reversed, explaining that the plaintiff was "seeking to have one court tell another court that its level of access is not good enough." *Id*. at 1070. But, this court held, "the state courts deserve[d] the first opportunity to hear such a constitutional challenge to their internal procedures." *Id*. at 1070. This court explained that the relief sought "directly affect[ed] the administration of the state courts" and therefore would have improperly "intrude[d] upon" their independence and decisions about how to "conduct their business." *Id*. at 1070-71, 1074 (cleaned up). "[B]asic principles of equity, comity, and federalism," which recognize that "state courts are co-equal to the federal courts and are fully capable of respecting and protecting" constitutional rights, warranted abstention so that the plaintiff could bring the claim in state court. *Id.* at 1070, 1074 (cleaned up).

This court's decisions in *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674 (7th Cir. 2010), and *Woodard* are also instructive. In *SKS*, the plaintiff brought a section 1983 claim against the chief judge of the Circuit Court of Cook County and the county sheriff, seeking an injunction directing the management of the circuit courts' eviction cases. 619 F.3d at 676-77. This court declined to exercise jurisdiction, explaining that "federal courts must defer to the state's sovereignty over the management of its courts." *Id.* at 682. Comity, the court added, would be "subverted" if the federal

courts were "to dictate to a state court how it must handle its case adjudication" when the plaintiff "failed to try the state court processes that can provide the relief" sought. *Id.*

In *Woodard*, the plaintiff was involved in ongoing divorce and child custody proceedings in Illinois domestic relations court, and he brought due process claims based on "a series of cascading events" culminating in "state court orders preventing parenting time with his kids." 997 F.3d at 721. The district court abstained from exercising jurisdiction under *Younger*, and this court affirmed, but under the broader abstention principles of "equity, comity, and federalism." *Id.* at 721-22. The plaintiff's invocation of section 1983, this court concluded, was "not enough" to "compel the adjudication of claims that would inject a federal court into a contested . . . family court custody dispute." *Id.* at 722. This "level of intrusion by the federal courts" was "simply too high" and would "reflect a lack of respect for the state's ability to resolve these issues properly before its courts." *Id.* (cleaned up).

This case presents the same level of requested intrusion into state court proceedings. Plaintiffs' claim is based on the decision of Judge Romanek, who was presiding over Paris's parents' post-divorce proceedings, that Paris should not attend a particular motion hearing, evidently based on her knowledge and familiarity with the case and the parties. Doc. 44 at 8-9. She likewise declined to admit Weinhaus to another hearing in the same case. *Id.* at 10. And plaintiffs alleged, Judge Evans purportedly failed to supervise Judge Romanek in managing her courtroom. *Id.* at 7-

9.  Thus, evaluating plaintiffs' claims would require federal courts to tell a state court judge that she was not able to determine whether Paris, the son of the divorcing parties and the brother of minor children whose interests were represented at the August 2024 hearing, was an appropriate attendee.  Such adjudication would "threaten interference with and disruption of local family law proceedings — a robust area of law traditionally reserved for state and local government — to such a degree as to all but compel the federal judiciary to stand down."  *Woodard*, 997 F.3d at 723; *see also id.* ("there is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law") (cleaned up).  And the claims against Judge Evans ask the federal courts to dictate how the chief judge of the Circuit Court of Cook County manages his fellow judges, a "far-reaching" request that "would apply to all [ ] cases filed in one of the busiest county courts in the country."  *Courthouse News*, 908 F.3d at 1070.  These claims, in other words, ask the federal courts to "to decide how state courts should conduct their business."  *Id.* at 1074.

Thus, the district court correctly observed that exercising jurisdiction over plaintiffs' claim would run "contrary to equity, comity, and federalism principles under the abstention doctrines."  Doc. 25 at 8-9; Doc. 53 at 2-3.  As in *Courthouse News*, state courts "should be given the first opportunity to determine precisely what level of access is "required, appropriate, and feasible."  908 F.3d at 1071.  "Unless and until the state courts have proven unwilling to address an alleged First

Amendment violation[,] . . . the federal courts should not exercise jurisdiction over the matter." *Id*.

### III. Alternatively, this court should affirm the dismissal of plaintiffs' action for failure to state a claim even though the district court concluded that abstention was appropriate.

If this court were to conclude that exercising federal subject matter jurisdiction is proper, it should affirm the dismissal of plaintiffs' action against state defendants for failure to state a claim. Although the district court determined that abstention on federalism and comity grounds was warranted, it did not, in fact, abstain from exercising jurisdiction over plaintiffs' action. Doc. 25 at 8-9; Doc. 53 at 2-3. Instead, the court also considered state defendants' arguments in favor of dismissing for failure to state a claim, agreed with them, and dismissed plaintiffs' claims with prejudice. Doc. 25 at 6-7; Doc. 53 at 3-4. The dismissal orders thus demonstrate that the district court exercised jurisdiction over plaintiffs' action, despite finding that abstention would be proper, and dismissed plaintiffs' claim as to both state defendants under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *See* Doc. 25 at 6-7; Doc. 53 at 3-4; *see also Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) ("A dismissal for failure to state a claim is with prejudice.").

Given that the district court did not abstain from exercising jurisdiction over the case, this court would not enlarge the judgment in state defendants' favor by affirming the dismissal of plaintiffs' action for failure to state a claim. As explained,

the district court exercised its jurisdiction over plaintiffs' claim despite deciding that abstention would have been appropriate. And the court had the ability to take that approach because unlike when a court lacks jurisdiction, and thus has no power to adjudicate the case, *see Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 550 (7th Cir. 2021), a court that abstains from exercising jurisdiction declines to adjudicate a case that it otherwise has the power to decide, *see Woodard*, 997 F.3d at 722. By deciding that the principles of federalism and comity counseled in favor of abstention, the district court did not rule that it lacked the power to resolve plaintiffs' claim, but only that declining to resolve the claims would be appropriate. If this court determines that abstention is not warranted here, it should therefore affirm the dismissal of plaintiffs' action for failure to state a claim because that was the basis for the district court's dismissal of the case and doing so would not enlarge the judgment in defendants' favor.[4]

## IV.     The district court correctly dismissed plaintiffs' right of access claim against state defendants with prejudice.

Even if this court were to conclude that exercising federal subject matter jurisdiction in this matter is proper, it should still affirm the district court's dismissal. First, the relief that plaintiffs sought was barred by judicial immunity, the

---

[4] In addition, affirming the dismissal for failure to state a claim would not violate the purpose of the abstention doctrines, which is to prevent federal "intru[sion] upon the independence of the state courts," *SKS*, 619 F.3d at 677, because the dismissal of plaintiffs' federal action with prejudice had no effect on the state court domestic relations proceedings and state court operations that were the reasons for abstaining.

Eleventh Amendment, and section 1983. Even if it were not, plaintiffs failed to state a right of access claim, and their claim against Judge Evans fails for the additional reason that he was not personally involved in the alleged constitutional violation.

### A. Plaintiffs' claims are barred by judicial immunity, section 1983, and the Eleventh Amendment.

This court should affirm the district court's dismissal because all of the relief that plaintiffs seek — damages, injunctive relief, and declaratory relief — is unavailable to them.

### 1. Absolute judicial immunity barred the claim for damages against Judge Romanek.

"[J]udges have absolute immunity from suits for damages that complain of their judicial acts." *Nowicki v. Cooper*, 56 F.3d 782, 783 (7th Cir. 1995). The doctrine of judicial immunity, which "has been embraced for centuries," applies to section 1983 actions and protects judges from claims challenging acts that were taken in the judge's judicial capacity. *Dawson v. Newman*, 419 F.3d 656, 660-61 (7th Cir. 2005) (cleaned up). It provides "an immunity from suit," not just liability, and it "is not overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity exists "not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (cleaned up). The immunity also protects the finality of judgments and discourages collateral attacks on judicial

acts.  *Forrester v. White*, 484 U.S. 219, 225 (1988).

When a judge is named as a defendant, they are immune unless the plaintiff's claim concerns non-judicial acts or the judge acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).  To decide if a judge's actions were judicial in nature, the court considers whether they served a function normally performed by a judge, whether the judge dealt with the parties in a judicial capacity, and whether the challenged acts involved discretion or judgment. *Kowalski v. Boliker*, 893 F.3d 987, 998 (7th Cir. 2018).  When that functional analysis reveals that the conduct was judicial in nature, the defendant "is entitled to absolute immunity from damages." *Brunson v. Murray*, 843 F.3d 698, 710 (7th Cir. 2016).

Here, Judge Romanek was immune because plaintiffs challenged acts she took in her judicial capacity.  Doc. 1 at 5.  Plaintiffs alleged that Judge Romanek was the presiding judge in Paris's parents' post-divorce proceedings and that she erred by denying them access to the August 2024 hearing.  *Id*. at 8-9.[5]  They allege that when they attempted to access the Zoom hearing, Judge Romanek was on the bench and

---

[5]  Although plaintiffs added allegations in the first and second amended complaints that Judge Romanek also improperly excluded Weinhaus from the September 2024 hearing, Judge Romanek was not named as a defendant in those subsequent complaints and plaintiffs' claim against her had already been dismissed with prejudice.  *See* Doc. 29 at 1-3, 7; Doc. 44 at 1-3, 10; *see also* Doc. 23 (dismissing Judge Romanek).  In the original complaint, in which Judge Romanek was a named defendant, plaintiffs alleged only that she excluded Paris from the August 2024 hearing.  Doc. 1 at 2.  But even if plaintiffs had included their allegations regarding the exclusion of Weinhaus from the September 2024 hearing in their claim against Judge Romanek, she was entitled to absolute judicial immunity for that decision for the same reasons as for excluding Paris from the August 2024 hearing.

prepared to hear presentment of a motion. *Id*. at 8. When Paris's family's matter was called, Judge Romanek allegedly declined to admit Paris, remarking: "Conor Paris is here. He has no business being here and he shouldn't be here and I am not letting him in. He shouldn't know about court dates." *Id*. at 2. Judge Romanek's decision that Paris was not an appropriate attendee at his family's domestic relations hearing was quintessentially judicial in nature.

In *Nowicki*, this court affirmed the district court's dismissal of a similar section 1983 claim against a family court judge on the basis of judicial immunity. 56 F.3d at 783-84. There, the plaintiff alleged that the state court judge unconstitutionally "refused to permit [him] to attend" two custody hearings before her. *Id*. at 783. The plaintiff "was neither a party to the proceedings nor an attorney for any of the parties." *Id*. Rather, he was a "founder and member of an organization called 'Divorced Dads Against Discrimination,'" which sought to "uphold the rights of fathers," and he routinely "assist[ed]" other members of the organization in legal disputes "in which a father's rights are in issue." *Id*. at 784. This court concluded that the district court's "dismissal was of course correct" because the judge's refusal to admit the plaintiff to the hearings was "judicial, and judges have absolute immunity from suits for damages that complain of their judicial acts." *Id*. at 783. As in *Nowicki*, Judge Romanek's decision to exclude Paris from the August 2024 hearing was judicial in nature. *See id*.; *see also Mireles*, 502 U.S. at 12 (state court judge was entitled to judicial immunity for directing police officers to

26

bring attorney into her courtroom); *Westbrook v. Hahn*, 829 Fed. Appx. 128, 132 (7th Cir. 2020) (state court judge was entitled to judicial immunity for holding nonparty in contempt when he returned to courtroom because judge "had power to control her courtroom that extended beyond parties litigating in front of her").

Plaintiffs do not argue that Judge Romanek acted in the clear absence of all jurisdiction. *See Stump*, 435 U.S. at 356-57; AT Br. 16-23. Nor could that argument prevail, as judges have "wide latitude to control courtroom atmosphere," *U.S. v. Mannie*, 509 F.3d 851, 857 (7th Cir. 2007), which is not limited to the "parties litigating in front of" them, *Westbrook*, 829 Fed. Appx. at 132; *see also People v. Hollahan*, 2020 IL 125091, ¶ 9 (judges have "inherent authority to manage [their] courtroom" and doing so is a "matter of the court's discretion") (cleaned up), and Illinois circuit courts have subject matter jurisdiction over divorce proceedings, *see* 750 ILCS 5/401; *see also Kowalski*, 893 F.3d at 998 (immunity applies where judge acts in connection with case pending before him); *John v. Barron*, 897 F.2d 1387, 1392 (7th Cir. 1990) (judicial immunity applies "so long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction"). Rather, plaintiffs assert that Judge Romanek's exclusion of Paris from the August 2024 hearing was an administrative act, not a judicial one. AT Br. 16-17. They are incorrect.

Plaintiffs first argue that Judge Romanek's decision was not judicial because it did not "involve[ ] the exercise of discretion or judgment" and was "summary,

immediate, and without application of any reasoned judicial process." *Id*. at 18.  But

that argument is contradicted by *Nowicki*, where this court held that a judge's

decision to exclude a nonparty from family court proceedings was a judicial act.  56

F.3d at 783.  That Judge Romanek's decision was "immediate" and did not articulate

her reasoning does not defeat judicial immunity because the decision was within her

jurisdiction.  *See Stump*, 435 U.S. at 359 (exercise of judge's jurisdiction in

"erroneous manner" does not make it "any less a judicial act" because judicial

immunity applies even if judge's "exercise of authority is flawed by the commission of

grave procedural errors"); *see also Westbrook*, 829 Fed. Appx. at 132 (judge entitled to

immunity for holding plaintiff in contempt without a hearing because decision was

judicial act and "[t]hat she abused the power or did not comply with due process

when doing so does not deprive her of immunity; she still acted within her

jurisdiction"); *Killinger v. Johnson*, 389 F.3d 765, 769-71 (7th Cir. 2004) (quasi-

judicial actor was entitled to judicial immunity for allegations that he "summarily

clos[ed] [the plaintiff's business] without issuing a written order, explaining his

reasons, or holding a hearing").

Furthermore, Judge Romanek did exercise judgment when she excluded

plaintiffs.  She did not indiscriminately close the August 2024 hearing to the public

but rather recognized "Conor Paris" specifically and decided that he had "no

business being" at the hearing.  Doc. 1 at 2.  In her role as a domestic relations judge,

Judge Romanek determined that a known member of the family appearing before her

was an inappropriate attendee. Plaintiffs' contention that Judge Romanek's decision "involve[d] no weighing of legal principles," AT Br. 19, does not hold water, in part because while "some judicial acts require extensive exercise of a judge's decision-making skills and others do not," that an act "is routine or requires no adjudicatory skill renders that activity no less a judicial function," *Thompson v. Duke*, 882 F.2d 1180, 1184 (7th Cir. 1989). Plaintiffs' citation to *Forrester* for the proposition that "employment decisions . . . are not entitled to absolute immunity" is inapposite, because here, Judge Romanek made a decision impacting a court hearing, not a non-adjudicatory personnel decision. *See* AT Br. 19 (citing *Forrester*, 484 U.S. at 229-30); *see Forrester*, 484 U.S. at 227 (focus is on the nature of function performed and immunity applies to "paradigmatic judicial acts involved in resolving disputes").

Plaintiffs next argue that Judge Romanek's decision was not an act "typically performed by a judge." AT Br. 20. Again, courts have consistently applied judicial immunity to claims based on attendance at court hearings. *See*, *e.g.*, *Mireles*, 502 U.S. at 12 ("judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge"); *Westbrook*, 829 Fed. Appx. at 132; *Nowicki*, 56 F.3d at 783. Plaintiffs point to the fact that court clerks are generally responsible for the "general administration of the [circuit court] and its physical facilities." AT Br. 20-21. But they do not contend, nor could they, that judges in Illinois do not have the "inherent authority to manage [their] courtroom." *Hollahan*, 2020 IL 125091, ¶ 9 (cleaned up); *see also Westbrook*, 829

Fed. Appx. at 132; *Mannie*, 509 F.3d at 857. That an act was "routine" does not "render [it] administrative or ministerial in nature." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 622-23 (7th Cir. 2002) (scheduling hearings is a judicial function); *Thompson*, 882 F.2d at 1184 (similar).

Finally, plaintiffs assert that Paris's interaction with Judge Romanek "was not in any judicial capacity" because Paris was not a party to the divorce proceedings and was attempting to exercise his right of access as a member of the public. AT Br. 22. But in *Nowicki*, this court held that a family court judge was entitled to judicial immunity for not permitting the plaintiff to attend custody hearings to which he was not a party. 56 F.3d at 783-84; *see also Mireles*, 502 U.S. at 12 (plaintiff "was called into the courtroom for purposes of a pending case" and was dealing with the judge in his judicial capacity). In fact, plaintiffs' argument that Judge Romanek was not performing a judicial act is belied by the complaint's allegation that that Judge Romanek "was set to hear the presentation of a motion" at the August 2024 hearing. Doc. 44 at 8. Their claim that this exclusion presented "procedural irregularities," AT Br. 23, does not alter this outcome. *See Stump*, 435 U.S. at 359 (judicial immunity applies even if judge's "exercise of authority is flawed by the commission of grave procedural errors").

At bottom, the district court correctly held that Judge Romanek was entitled to absolute judicial immunity for her decision to deny plaintiffs access to the 2024 hearings, and this court should affirm.

### 2. Absolute judicial immunity barred the claim for damages against Judge Evans.

The district court also observed that the individual-capacity claim for damages against Judge Evans was barred by judicial immunity. Doc. 53 at 3; *see id*. at 1 n.4 (addressing only the individual-capacity claim against Judge Evans because an official-capacity claim against him could not proceed). Plaintiffs do not address this issue in their opening brief, and therefore they have forfeited any argument that Judge Evans is not immune from suit. *See White*, 8 F. 4th at 552 (failure to raise argument in opening brief results in forfeiture); AT Br. at 16-17 ("The District Court erred when it concluded that [Judge] Romanek enjoyed absolute judicial immunity"); *id*. at 17 ("[Judge] Romanek's decision to exclude Plaintiff-Appellants . . . from an otherwise public court proceeding was an administrative act falling outside the scope of judicial immunity."); *id*. at 20 ("[Judge] Romanek's Decision to Exclude Plaintiff-Appellants was Not an Act That is Normally Performed by a Judge"); *id*. at 22 ("Paris's interaction with [Judge] Romanek . . . was not in any judicial capacity.").

Forfeiture aside, judicial immunity absolutely barred both the individual- and official-capacity claims against the Chief Judge, as numerous other courts have recognized when facing similar claims attempting to hold chief judges liable for the judicial acts of other judges. *See Williams v. Howell*, No. 23-312, 2023 U.S. Dist. LEXIS 36990, at *4 (D.D.C. Mar. 6, 2023) (claim against chief judge based on supervision of subordinate judge was barred by judicial immunity); *Brown v. Maine*, No. 11-cv-426, 2012 U.S. Dist. LEXIS 160600, at *14 (D. Me. Nov. 12, 2012) ("A claim

that a chief judge failed to properly supervise another judge is barred by absolute judicial immunity."); *Foley v. Marquez*, No. 03-2481, 2004 U.S. Dist. LEXIS 4870, at *9 (N.D. Cal. Mar. 22, 2004) (similar); *see also Johnson v. McCuskey*, 72 Fed. Appx. 475, 477 (7th Cir. 2003) (rejecting plaintiff's argument that district judge's "supervision" of magistrate judge was administrative act); *McMillan v. Svetanoff*, 793 F.2d 149, 153 (7th Cir. 1986) (citing *Rheuark v. Shaw*, 628 F.2d 297 (5th Cir. 1980)) (discussing case in which judge's supervision of court reporters was appropriately deemed a judicial function); *contra Forrester*, 484 U.S. at 229 ("personnel decision[s]" made by judges, such as demotion and discharge of probation officer, are administrative and thus not entitled to judicial immunity).

### 3. Section 1983 bars plaintiffs' claims for injunctive relief.

Plaintiffs argue that even if their claims for damages are barred, they can pursue prospective injunctive relief in this action. AT Br. 23 (citing *Pulliam v. Allen*, 466 U.S. 522 (1984)).[6] They are incorrect, as the plain text of section 1983 demonstrates. While judicial immunity did not originally bar "prospective injunctive relief against a judicial officer acting in her judicial capacity," *Pulliam*, 466 U.S. at 541-42, in 1996, Congress amended section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial

---

[6] Plaintiffs sought injunctive relief against Judge Romanek in the original complaint, Doc. 1 at 8, but did not seek injunctive relief against Judge Evans in the operative second amended complaint, Doc. 44 at 13. To the extent that this court finds that plaintiffs did seek injunctive relief against Judge Evans, the same arguments apply.

capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable," Federal Courts Improvement Act, Pub. L. No. 104-317, § 309(c); 42 U.S.C. § 1983; *see File v. Martin*, 33 F.4th 385, 391 (7th Cir. 2022) ("Congress abrogated *Pulliam*'s holding in 1996 by amending § 1983 to expressly bar such claims."); *see also Smith v. City of Hammond*, 388 F.3d 304, 307 (7th Cir. 2004) (upholding dismissal of claims for injunctive relief against state court judge as foreclosed by section 1983).

Injunctive relief is not available to plaintiffs because they did not allege that state defendants violated a declaratory decree or that declaratory relief was unavailable. Plaintiffs therefore failed to invoke the narrow exception for injunctive relief set forth in section 1983. *See Reardon v. Danley*, 74 F.4th 825, 827 (7th Cir. 2023) (upholding dismissal of section 1983 claim for injunctive relief where "complaint [did] not allege that either exception applie[d] here"). Because state defendants were acting in their judicial capacity, *see* supra pp. 24-33, any claim seeking injunctive relief against them is barred by section 1983. *See* 42 U.S.C. § 1983.

### 4. **Plaintiffs are not entitled to declaratory relief.**

Plaintiffs also cursorily assert that declaratory relief is not subject to judicial immunity, but plaintiffs are "not seeking declaratory relief in the true legal sense." *See Johnson*, 72 Fed. Appx. at 477. Plaintiffs want the federal courts to "declare" that state defendants' past "actions violated Plaintiffs' rights under the First and

Fourteenth Amendments."  Doc. 1 at 8; Doc. 44 at 13.  But declaratory judgments "are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."  *Johnson*, 72 Fed. Appx. at 477 (citing, as an example, a party seeking to determine whether a contract term is binding so it "need not risk breaching the contract and await a suit").  "Declaratory judgments are not meant simply to proclaim that one party is liable to another."  *Id*.  Indeed, declaratory relief under section 1983 "is only proper if there is a continuing violation of federal law," which plaintiffs do not allege.  *See Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 894 (7th Cir. 2012).  Thus, this court should find that plaintiffs' so-called "declaratory relief" does not alter the conclusion that their section 1983 claims against state defendants are barred by judicial immunity.

### 5. Plaintiffs' official-capacity claim against the Chief Judge was also barred by the Eleventh Amendment.

The district court also correctly dismissed the official-capacity claim against the Chief Judge as barred by the Eleventh Amendment because state officials in their official capacities are not "persons" for purposes of section 1983, Doc. 53 at 1 n.4.[7]  To start, plaintiffs do not address the dismissal of this claim, *see generally* AT Br., and

---

[7]  Plaintiffs described their official-capacity claim as one against Judge Evans "in his representative capacity as The Circuit Court of Cook County," Doc. 44 at 1, which the parties understood to be naming Judge Evans in his official capacity as the Chief Judge of that court, *see id.* at 10 ("Judge Evans, as the Chief Judge and in his representative capacity as the Circuit Court of Cook County . . . .").  To the extent that claim was against the Circuit Court of Cook County itself, such a claim would be barred by the Eleventh Amendment.

they therefore forfeited any argument that it was erroneous, *see White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). Regardless, it was correct. State officials in their official capacities are not "persons" for purposes of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Similarly, such a claim is barred by the Eleventh Amendment, which renders States, state agencies, and state officials sued in their official capacities immune from being sued in federal court. *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005).

For their part, plaintiffs appear to cast their claim against the Chief Judge as one based on a *Monell* theory of liability. AT Br. 23-27; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But *Monell* does not permit a claim against the Chief Judge in his official capacity or provide an exception to the Eleventh Amendment, because *Monell* does not provide for liability against States. *Will*, 491 U.S. at 70 ("States are protected by the Eleventh Amendment while municipalities are not, and we consequently limited our holding in *Monell* to local government units which are not considered part of the State for Eleventh Amendment purposes") (cleaned up); *Joseph*, 432 F.3d at 748-49 ("*Monell*'s holding applies only to municipalities and not states or states' departments."). Illinois circuit courts are part of the state judicial system, Ill. Const. art. VI, § 7(a), making the Chief Judge a state official, *see, e.g.*, *Nowicki*, 56 F.3d 782, 784 (7th Cir. 1995) (official-capacity claim against state court judge barred by sovereign immunity because she was employed by the state). Accordingly, *Monell* does not permit a claim against that office.

To be sure, there are three exceptions to Eleventh Amendment immunity, when (1) Congress abrogates a State's immunity, (2) the State consents to being sued in federal court, or (3) the action seeks prospective injunctive relief against state officials sued in their official capacity under the doctrine articulated in *Ex parte Young*, 209 U.S. 123 (1908). *See Council 31 of AFSCME, AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012). But plaintiffs do not contend that the first two exceptions apply. As for the third exception, they did not seek prospective injunctive relief against the Chief Judge. Doc. 44 at 13-14. Even if they had, it is not available here, as now explained.

In sum, none of the relief sought by plaintiffs is available to them, and this court should affirm the dismissal of plaintiffs' right of access claim.

**B.      Plaintiffs failed to plead a right of access under *Press-Enterprise*.**

Even if this court finds that plaintiffs' requested relief is not barred, they failed to establish a right of access to the hearings at issue and thus failed to state a claim upon which relief may be granted.

As the district court explained, "[t]o determine whether the right of access exists," courts apply the two-part test prescribed by the Supreme Court in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986). Doc. 53 at 2. The test first asks whether "a proposed right reflects a well-developed tradition of access to a specific process," then asks whether "the right 'plays a significant positive role in the functioning of the particular process in question.'" *Courthouse News*, 908 F.3d at

36

1070 (quoting *Press-Enterprise*, 478 U.S. at 8). A right of access "attaches under the First Amendment" only if the answer to both inquiries is "yes." *See id*.

Plaintiffs have not demonstrated that a right of access attached here. According to the second amended complaint, the 2024 hearings were part of Paris's parents' post-divorce proceedings in the circuit court. Doc. 44 at 8. Judge Romanek was presiding over "any post-dissolution matters that ar[o]se between the parents until [Paris's] youngest sibling emancipates," and Paris sought to attend the August 2024 hearing in part to observe "the representation his minor siblings were receiving" from their guardian *ad litem*. *Id*. But none of plaintiffs' three complaints allege that there is a "well-developed tradition of access to" such matters. *Courthouse News*, 908 F.3d at 1070. Indeed, not all court proceedings are open to the public. For example, Illinois courts can, and sometimes must, exclude the public from hearings involving minors. *See*, *e.g.*, 750 ILCS 5/606.5(d) (under Illinois Marriage and Dissolution of Marriage Act, if court finds that public hearing regarding parental responsibilities may be detrimental to a child's best interests, "the court shall exclude the public from the hearing"). Nor do plaintiffs allege that access to domestic relations hearings involving minors "plays a significant positive role in the functioning" of those hearings, *see Courthouse News*, 908 F.3d at 1070 (cleaned up), an inquiry that "'must perforce consider whether it is potentially harmful,'" *AP v. Neal*, No. 25-2025, 2026 U.S. App. LEXIS 16267, at *11 (7th Cir. June 5, 2026) (quoting *N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198, 200-01 (3d Cir. 2002)).

But plaintiffs' complaints lack any allegations regarding the role of accessibility in domestic relations hearings involving minors, whether positive or negative, and plaintiffs thus failed to sufficiently plead a right of access. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face") (cleaned up).

Plaintiffs never addressed the *Press-Enterprise* factors before the district court. *See* Doc. 53 ("Plaintiffs' response brief still does not engage with *Press-Enterprise Co.*"). Rather, plaintiffs stated that "the proceedings in question were routine post-dissolution hearings — public matters open to general attendance where other individuals were permitted to observe." Doc. 50 at 3-4. But whether the hearings were "routine" or "other individuals were permitted to observe" is irrelevant to the controlling factors, *i.e.*, whether domestic relations proceedings "have historically been open to the . . . general public" or whether public access to domestic relations proceedings "plays a significant positive role" in their functioning. *See Press-Enterprise*, 478 U.S at 8. Plaintiffs also argued that state defendants lacked a "compelling interest" for excluding them from the 2024 hearings. Doc. 50 at 4. But the "compelling interest" question goes to whether, once "a qualified First Amendment right of public access attaches," the right can be denied. *See Press-Enterprise*, 478 U.S. at 9-10; *see also Globe Newspaper Co. v. Super. Ct. for the Cnty. of Norfolk*, 457 U.S. 596, 606-07 (1980). Plaintiffs failed to satisfy the threshold issue of showing that they had a right to access the 2024 hearings.

**C.     The individual-capacity claim against Judge Evans fails for the additional reason that plaintiffs did not allege his personal involvement in the alleged constitutional violation.**

The district court correctly held that plaintiffs did not "allege facts demonstrating Judge Evans's personal involvement in (or awareness of) [Judge] Romanek's decisions, as required by [section 1983]" and dismissed the individual-capacity claim on that basis. *See* Doc. 53 at 3. The court can therefore also affirm the dismissal of this claim on this independent basis.

Individual liability under section 1983 requires that the defendant be personally involved in the alleged constitutional deprivation. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010); *see Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (2022) (government official will only be liable if he or she "personally caused or participated in a constitutional deprivation" through the official's "own individual actions") (cleaned up). Accordingly, the "doctrine of *respondeat superior* does not apply" to section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *see Iqbal*, 556 U.S. at 676 ("vicarious liability is inapplicable to . . . [section] 1983 suits"). To be held liable under section 1983, a "supervisory official must have known of, facilitated, approved, condoned, or turned a blind eye to his subordinates' activity," none of which plaintiffs alleged as to Judge Evans. *Ollison v. Gossett*, 136 F.4th 729, 735-36 (7th Cir. 2025); *see also Sanville*, 266 F.3d at 740 ("A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or

consent.").

Here, plaintiffs allege that their First Amendment right of access was violated when Judge Romanek denied them entry to the 2024 hearings. Doc. 44 at 13. They allege generally that Judge Evans was "deliberate[ly] indifferen[t] to "Judge Romanek's behavior," *id*. at 11, but they never allege that Judge Evans was involved in her decisions, or that he even had knowledge of their occurrence, *see generally id*. Plaintiffs' allegation that Judge Evans "failed to ensure" that the circuit court "remained open and accessible" is merely an allegation that he failed to supervise another judge. *Id*. at 9.

Plaintiffs also allege that Judge Evans "fail[ed] to stop the delegitimization efforts of Judge Scannicchio and Meis," which in turn "den[ied] them admission to a public court proceeding." *Id*. at 12. But this fails to establish Judge Evans's individual liability because plaintiffs do not allege that these "delegitimization efforts" caused the alleged constitutional deprivation in this case — Judge Romanek's failure to admit them to the hearing. They assert that if Judge Evans had "counteracted the false delegitimzation . . . the wrongs herein would not have happened," *id*. at 7, but the court need not accept such conclusory allegations as true, *KAP Holdings*, 55 F.4th at 523; *see Iqbal*, 556 U.S. at 679 (to survive a motion to dismiss, complaint must "permit the court to infer more than the mere possibility of misconduct").

Plaintiffs' opening brief does not address the district court's ruling that they

did not plead Judge Evans's personal involvement, and so they have forfeited any argument that it was error. *See White*, 8 F.4th at 552. Rather, they insist that they stated a claim against Judge Evans under a *Monell* theory of liability. AT Br. 23-27. But as explained *supra* p. 35, *Monell* does not apply to claims against state officials. Even if it did, plaintiffs failed to sufficiently plead that theory. Under *Monell*, a plaintiff can hold a local government liable under section 1983 if he can prove that the "government's policy or custom" causes his injury. 436 U.S. at 694. Plaintiffs' allegations that Meis made comments about Children of the Court to "numerous individuals within the Illinois Judiciary," Doc. 44 at 6, was, at most, an "isolated series of events," which "do not amount to a widespread custom or practice," *Lee v. Milwaukee Cnty.*, 175 F.4th 877, 887 (7th Cir. 2026). And even though they allege that Judge Evans knew about the statements, it was not "obvious" that failure to correct those statements would lead to constitutional violations. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (If a defendant's action is not "facially unconstitutional," the plaintiff must prove that it was "obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences."); *see also Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 599 (7th Cir. 2019) ("[f]ailure-to-supervise claims . . . are a 'tenuous' form of *Monell* liability" because such claims "seek to hold a municipality liable . . . for causing an employee's misconduct" and are "subject to rigorous fault and causation requirements") (cleaned up).

41

In sum, plaintiffs failed to state a claim that state defendants violated a First Amendment right of access.

## CONCLUSION

For these reasons, this court should affirm the district court's judgment.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3312

Attorneys for State
Defendants-Appellees

**SAMANTHA E. CUTLER**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-2531 (cell)
(773) 835-0740 (office)
Samantha.Cutler@ilag.gov

July 7, 2026

**CERTIFICATE OF COMPLIANCE WITH PAGE LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365, in 12-point Century Schoolbook BT font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(B) in that the brief contains 10,791 words.

/s/ Samantha Cutler
**SAMANTHA CUTLER**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-2531 (cell)
(773) 835-0740 (office)
Samantha.Cutler@ilag.gov

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 7, 2026, I electronically filed the foregoing Brief of State Defendants-Appellees with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participants in this appeal, named below, are CM/ECF users and will be served by the CM/ECF system:

Adam J. Florek
aflorek@florekllc.com

Silvia Mercado Masters
silvia.mercadomasters@cookcountysao.org

/s/ Samantha Cutler
**SAMANTHA CUTLER**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-2531 (office)
(773) 835-0740 (cell)
Samantha.Cutler@ilag.gov